IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAAAT TECHNICAL SERVICES, LLC,

        Plaintiff,

v.

        Civil Action No. 3:16cv998-MHL

TETRA TECH EC, INC., *et al*.,

        Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR MOTION TO ADD INDISPENSIBLE PARTY

Faced with the possible dismissal of its case against the true party in interest for lack of subject matter jurisdiction, Plaintiff desperately seeks to bring its claims against related corporate entities subject to diversity jurisdiction.[1] But, Plaintiff fails to state a claim against either defendant, and the Court should dismiss the Amended Complaint or, in the alternative, order the addition of that true party in interest as a necessary party.

This Motion to Dismiss presents the Court with three straightforward issues. First, under applicable state law, in order for a court to pierce the corporate veil, there must be sufficient factual

---

[1] JAAAT has filed claims arising from the same basic facts in *JAAAT Technical Services, LLC v. Tetra Tech Tesoro, Inc.* Civil Action No. 3:15-cv-235MHL ("Tesoro Action"). Pending before the Court in that case is the reconsideration of whether the Court has subject matter jurisdiction under a federal question because the Plaintiff alleges the existence of a federal enclave. The Court conducted a December 5, 2016 hearing at which time she indicated she had serious reservations that the Court had jurisdiction. From the bench, the Court announced she was "very close to a decision that I lack jurisdiction in this case" and that she would issue her ruling after she took "one more hard look and see if there's any basis that I can find for federal jurisdiction." (Docket No. 98 at 55-57). No formal ruling has issued. This action was filed within two weeks of that hearing asserting the same "federal enclave jurisdiction" arguments. (Docket No. 1). As the federal question jurisdiction issues have been fully briefed previously, and the Court has made a preliminary indication that she has no such jurisdiction, Defendant's Motion proceeds only regarding the allegations made alleging diversity jurisdiction. In the event that the Court finds no federal question jurisdiction in the Tesoro Action and orders the addition of Tetra Tech Tesoro, Inc., a Virginia corporation, diversity will be destroyed and this case dismissed for lack of jurisdiction.

1

allegations of 1) the misuse of the corporate form, and 2) an element of fraud. Absent sufficient allegations, the Court should not disregard the corporate form of two independent corporations to allow Plaintiff to pursue claims that it has already made in another matter in this Court against the real party in interest. The Court in that case is currently considering whether it has subject matter jurisdiction over the same fundamental claims that are raised here.

Second, parent and sibling companies are protected from claims for tortious interference by qualified immunity absent a sufficient factual showing that the parent/sibling company is not acting in the best interest of subsidiary/sibling company or that the parent/sibling company used wrongful means to interfere with its subsidiary/sibling. Absent sufficient allegations, the Court should not allow the Plaintiff to pursue such claims.

Third, in furtherance of its effort to skirt the Court's possible dismissal of the Tesoro Action for lack of subject matter jurisdiction, Plaintiff has elected to not name the true party in interest to the allegedly breached contracts, but instead name only affiliated companies under an alter-ego theory. The failure to name the signatory to the relevant contracts violates Fed.R.Civ.P. 19 and the Court should order the true party in interest to be joined as a necessary party.

**I.      BACKGROUND**

In its role as a general contractor, JAAAT, a Virginia LLC, entered into two teaming agreements ("Teaming Agreements") with Tetra Tech EC, Inc. ("EC"), by which the parties agreed to seek contracts from the U.S. Government for construction projects. Docket No. 4 ¶¶ 1, 27. The terms of the Teaming Agreements specifically provide that the Teaming Agreements, by their own terms, terminated upon the execution of any subcontracts successfully obtained by the parties. Docket No. 4, Ex. 4 at 7, 20.

JAAAT ultimately entered into five contracts with the government for construction projects on military installations in Georgia and North Carolina. JAAAT then entered into five subcontracts ("Subcontracts") with Tetra Tech Tesoro, Inc. ("Tesoro") a Virginia corporation and sister company to EC and wholly owned subsidiary to Tetra Tech, Inc. ("TTI"), to perform construction work on those five projects. Docket No. 4 ¶ 30. All five Subcontracts clearly identify Tetra Tech Tesoro, Inc. as the subcontractor. Docket No. 4, Exs. 5, 6, 7, 9, 12 at 1. None of the five Subcontracts identify either Defendant in this case as a contracting party. Each of the Subcontracts contains an integration provision that provides that the Subcontracts "contain and embrace the entire agreement between the parties..." *Id.* ¶ 32.

By its Amended Complaint, JAAAT alleges that EC and/or TTI should be liable for the actions of Tesoro under an agency or alter ego theory. First, JAAAT alleges that Tesoro was an agent of EC for the purposes of the Subcontracts, such that JAAAT contracted with EC. *See* Docket No. 4 ¶¶ 31 - 40. Second, JAAAT alleges that Tesoro was "a mere instrumentality of EC and TTI." Docket No. 4 ¶ 41. As support for its allegations, Plaintiff makes the unsupported claim that Tesoro was not and is not adequately capitalized and that "EC was exercising complete dominion and control over Tesoro…" Docket No. 4 ¶ 36.

In the alternative, JAAAT claims that EC and TTI tortiously interfered with the Subcontracts and with JAAAT's contracts with the government. Docket No. 4 Counts VI-VIII. JAAAT's allegations of tortious interference are based on five alleged acts, all without sufficient factual allegations to support the claims. Docket No. 4 ¶¶ 52, 53, 126, 129. JAAAT makes no allegations whatsoever supporting its claim that Tesoro was not or is not adequately capitalized. The sum total of JAAAT's allegations that TTI and/or EC exercised complete dominion and

control Tesoro is that there were two employees of EC who performed limited functions for Tesoro. Docket No. 4 ¶¶ 37-39.

JAAAT makes three allegations that EC and/or TTI tortiously directed Tesoro to take various legal action. JAAAT alleges that EC and/or TTI directed Tesoro to file lawsuits against JAAAT in forums that violated the forum selection clauses in the Subcontracts. *Id.* ¶¶ 52, 126, 129. JAAAT offers no factual predicate for that allegation beyond the unsupported assumption that in filing those lawsuits, Tesoro was acting upon instructions from unnamed TTI and EC employees. Docket No. 4 ¶ 52. JAAAT then alleges that EC and/or TTI directed Tesoro to challenge the jurisdiction of Virginia courts. *Id.* ¶¶ 126, 129. JAAAT makes no effort to even allege facts that support that allegation. Finally, JAAAT alleges that EC and/or TTI directed Tesoro to seek injunctions in North Carolina courts that froze project monies. *Id.* Again, beyond the bare allegation, JAAAT makes no effort to plead facts in support of its claim that TTI and/or EC took any action to direct Tesoro to pursue any specific litigation strategy.

JAAAT's final allegations of EC and/or TTI's tortious interference are that EC and/or TTI directed Tesoro to breach its subcontracts by instructing its subcontractors to pull off the Fort Bragg job, and then generally, to hinder JAAAT's ability to meet its obligations to the government. *Id.* Beyond its conclusory allegations, JAAAT offers no factual assertions supporting its claims that TTI and/or EC took any action to cause Tesoro to allegedly breach the Subcontracts.

## II. APPLICABLE LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, courts must dismiss a complaint unless the plaintiff alleges sufficient facts to move its claims from the realm of merely conceivable to plausible. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,*

4

556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 570) (internal quotations omitted); *Bradford v. HSBC Mortg. Corp.,* 799 F. Supp. 2d 625, 629 (E.D. Va. 2011). For a complaint to allege a *plausible* claim, the facts must "permit the court to infer more than the mere possibility of misconduct." *A Society Without a Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011); *see also Twombly,* 550 U.S. at 555 (plausibility requires that the factual allegations "be enough to raise a right to relief above the speculative level").

In assessing plausibility, legal conclusions couched as factual allegations are not accepted by the court. *Twombly,* 550 U.S. at 555 (internal citation omitted). Similarly, labels and conclusions, or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Complaints relying on "naked assertions" without further factual enrichment are insufficient. *Id.* (citing *Twombly,* 550 U.S. at 557). A plaintiff must plead more than facts merely consistent with a defendant's liability. *Id.* (citing *Twombly,* 550 U.S. at 557). As the Fourth Circuit succinctly stated, "[a] court decides whether this *[Twombly/Iqbal]* standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged." *A Society Without a Name,* 655 F.3d at 346 (quoting *Iqbal,* 556 U.S. at 678).

A plaintiff cannot avoid the requirements of *Twombly/Iqbal* by offering legal conclusions and claiming a need for discovery. As this Court explained:

> This is precisely the sort of fishing expedition the Supreme Court sought to avoid in requiring the plaintiff to plead facts demonstrating their entitlement to relief and the defendant's liability for misconduct. [A] district court must retain power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed. Plaintiffs cannot be permitted to pursue "extensive discovery" with nothing more than a series of conclusory

5

> allegations and an unfounded hope that the process will yield favorable results.

*Ali v. Allergan USA, Inc.,* No. 1:12-cv-115, 2012 WL 3692396, at *14 (E.D. Va. Aug. 23, 2012) (Lee, J.) (internal citations and quotations omitted) (alteration in original).

When ruling on a Rule 12(b)(6) motion, courts consider the complaint and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Girgis v. Salient Solutions, Inc.,* No. 1:11-cv-1287, 2012 WL 2792157, at *7 (E.D. Va. July 9, 2012) (Lee, J.). The Court may also consider "official public records, documents central to a plaintiff's claim, and documents sufficiently-referred to in the Complaint without converting the motion to dismiss into one for summary judgment." *Seale & Assoc., Inc. v. Vector Aerospace Corp.,* No. 1:10-cv-1093, 2010 WL 5186410, at *2 (E.D. Va. Dec. 7, 2010) (quoting *Witthohn v. Fed. Ins. Co.,* 164 F. App'x. 395, 396-97 (4th Cir. 2006)). When there is a conflict between the allegations in a complaint and the contents of documents incorporated into or referenced in the complaint, the contents of the documents control. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F. 2d 1462, 1465 (4th Cir. 1991); *Space Tech. Dev. Corp. v. Boeing Co.,* 209 F. App'x. 236, 238 (4th Cir. 2006); *Witherspoon v. Jenkins,* No. 1:11-cv-963, 2011 WL 6934589, at *2 (E.D. Va. Dec. 30, 2011).

IV. **ANALYSIS**

    A. <u>**JAAAT'S ALTER EGO CLAIMS FAIL**</u>

In diversity cases, this Court is required to apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Virginia law dictates that the law of the state of incorporation determines whether a corporate veil may be pierced. *Morrow v. Vaughan-Bassett Furniture Co*., 4 S.E.2d 399, 401 (Va. 1939); *C.F. Trust,*

*Inc, v. First Flight Ltd. P'ship*, 359 F. Supp. 2d 497, 501 n.6 (E.D. Va. 2005), *Int'l Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 477 n.18 (E.D. Va. 2002). Plaintiff correctly alleges that EC and TTI are Delaware corporations. Docket No. 4 ¶¶ 2, 3. Consequently, Delaware law governs the requirements for establishing alter ego liability.

"Delaware courts take the corporate form and corporate formalities very seriously," and a plaintiff has "a substantial burden in this respect." *Case Fin., Inc. v. Alden*, No. 1184, 2009 WL 2581873, at *4 (Del. Ch. Ct. Aug. 21, 2009); *see also Microstrategy Inc. v. Acacia Research Corp.*, No. 5735, 2010 WL 5550455, at *11 (Del. Ch. Ct. Dec. 30, 2010) (Delaware law embodies a strong "public policy [that] does not lightly disregard the separate legal existence of corporations"). Accordingly, "a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *Id.*; *BASF Corp. v, POSM II Props. P'ship, L.P.*, 2009 WL 522721, at *8 n.50 (Del. 2 Ch. Ct. Mar. 3, 2009). To prevail on an alter ego theory, a plaintiff must plead and prove two separate elements.

First, a plaintiff must plead and prove facts showing the "misuse of the corporate structure." *Microstrategy*, 2010 WL 5550455, at *11 (citing *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical Fr.*, No. 19760, 2004 WL 415251, at *7 (Del. Ch. Ct. Mar. 4, 2004)). In assessing whether the corporate structure has been misused, Delaware courts consider:

> (1) whether the company . . . was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the controlling shareholder.

7

*Case Fin., Inc.*, 2009 WL 2581873, at *4.

Second, even if the above factors show a misuse of the corporate structure, that showing is insufficient to support a disregard of the corporate form under Delaware law. Rather, in addition to a showing on the factors described above, "*[t]here also must be an element of fraud to justify piercing the corporate veil.*" *Id*. (emphasis added). As the federal district court in Delaware explained:

> Any breach of contract and any tort – such as patent infringement – is, in some sense, an injustice. Obviously, this type of "injustice" is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud.

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989); *see also Medi-Tec*, 2004 WL 415251, at *4 n.30 (quoting and adopting reasoning in *Mobil Oil Corp*.).

Here, the Amended Complaint does not satisfy either of these pleading requirements. As for indicia of misuse of the corporate structure, the closest allegations from the Amended Complaint are that Tesoro is not sufficiently capitalized, and that Tesoro, TTI and EC intermingle limited staff and accounting functions. Docket No. 4 ¶ 41. JAAAT makes no allegations regarding the level of capitalization needed for Tesoro to undertake the Subcontract work and its allegation regarding the sharing of employees, even if true, does not qualify as one of the indicia of misuse of the corporate structure. *See, Case Fin., Inc.*, 2009 WL 2581873, at *4 (listing relevant factors bearing on misuse of corporate form), *EBG Holdings LLC V. Vredezichs Gravenhage 109 BV*, 2008 WL 4057745, *12-13 (Del. Ch. Ct. Sept. 2, 2008)(sharing of employees and management insufficient to support alter-ego theory; conclusory allegations regarding insufficient capitalization insufficient without allegations regarding proper capitalization).

8

Even more important, JAAAT's Amended Complaint makes no allegations whatsoever that Tesoro or its affiliates used the corporate form to perpetuate a "fraud or something like fraud." *Mobil Oil Corp.*, 718 F. Supp, at 268. An alter ego claim is dead on arrival if the plaintiff cannot plead a plausible claim that the corporate form was used to perpetrate fraud, even if the laundry list of factors considered for the first part of the alter ego test suggests misuse of the corporate form. *Id.*; *see also Case Fin., Inc.*, 2009 WL 2581873, at *4 ("There also must be an element of fraud to justify piercing the corporate veil."); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013) (alter ego liability is only appropriate where the "corporate form [is] being used for wrongful purposes"). Because JAAAT makes no allegation of fraud,[2] and offers only unsupported legal conclusions on issues of capitalization and staffing that (even if supported by facts) would not satisfy the requirement for misuse of corporate form, JAAAT cannot proceed in this action on an alter ego theory.

In *SEC v. Woolf*, 835 F. Supp. 2d 111 (E.D. Va. 2011) (Lee, J.), this Court applied Virginia and Utah law, which appear to be identical in all respects to Delaware law, and rejected an alter ego claim that was based on "labels and conclusory allegations that cannot survive a Rule 12(b)(6) motion without further factual enhancement." *Id.* at 124 (citing *Iqbal*, 556 U.S. at 678). *Woolf* is no outlier; this Court regularly rejects alter ego claims at the motion to dismiss stage when the plaintiff's complaint merely offers labels and legal conclusions that hew to the factors required for

---

[2] Because Delaware law requires a showing of fraud to pierce the corporate veil, facts supporting such an allegation must be alleged with particularity pursuant to F.R.Civ.P. 9(b). *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005); *Coyer v. Hemmer*, 901 F. Supp. 872, 883 (D.N.J. 1995); *Shadix-Marasco v. Austin Regional Clinic, P.A.*, No. 09-CA-891, 2010 WL 2232804, at *5-6 (W.D. Tex. June 1, 2010). Here, JAAAT makes no allegation whatsoever that Tesoro, EC or TTI used the corporate form to perpetrate a fraud, much less an allegation that is pleaded with particularity.

9

alter ego liability but provides insufficient supporting facts. *See, e.g., Lower Neuse Preservation Group, LLC v. Boats, Etc., Inc.*, No. 4:11-cv-77, 2011 WL 4565434, at *3 (E.D. Va. Sept. 28, 2011) (dismissing alter ego claim where plaintiff merely alleged that the corporation "fail[ed] to observe other corporate formalities" and "abus[ed] the corporate form" while "describ[ing] no 'corporate formalities' which Boats, Etc. failed to observe"); *see also Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 426-27 (E.D. Va. 2011); *Spacenet, Inc. v. Am. Agricultural Comm'cn Sys., Inc.*, No. 1:05-cv-1231, 2005 WL 3416644, at *2 (E.D. Va. Dec. 8, 2005) (holding that allegation that corporation was undercapitalized was insufficient to state a claim for alter ego liability).

Counts I through V of the Amended Complaint allege only breaches of the Subcontracts. Docket No. 4 ¶¶ 59-123. Other than substituting TTI and EC as the contracting parties, those counts are substantively identical to those pending the Tesoro Action. JAAAT's conclusory allegations that TTI and/or EC were alter egos for Tesoro, bereft of facts, are insufficient to withstand a motion to dismiss. To allow JAAAT's claims to proceed against TTI and/or EC would be a complete rejection of the entire concept of corporate separateness, as JAAAT has not alleged the extraordinary circumstances required to pierce the corporate veil, such as a particularized allegation of fraud or facts concerning the misuse of the corporate form.

  **B.**   <u>**JAAAT'S TORTIOUS INTERFERENCE CLAIMS FAIL**</u>

A parent or sister company may be liable for tortious interference with a subsidiary company's contract only if the interference is "contrary to the subsidiary's [or sister company's] economic interest or…employs wrongful means." *Technology and Supply Management, LLC v. Johnson Controls Building Automation Systems, LLC*, 2017 WL 57134, *5 (E.D. Va. 2017). Here, JAAAT does not claim either that TTI and/or EC induced or directed Tesoro to commit breaches

that were against its economic interests, or that EC and/or TTI used wrongful means to induce or cause *Tesoro* to breach the Subcontracts. *Id. citing Boulevard Associates v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1037 (2nd Cir. 1995) ("Tortious interference with contract requires the use of improper means to induce a party to breach the agreement; thus, [the parent's] actions had to intimidate [*its subsidiary*] rather than the [the subsidiary's counterparty])(emphasis in original). While JAAAT makes various allegations that EC and/or TTI threatened JAAAT, Docket No. 4 ¶¶ 50, 52, nowhere does it allege that EC or TTI engaged in any wrongful means to entice or force Tesoro to breach any obligations under the Subcontracts.

In addition to JAAAT's failure to sufficiently plead the elements of tortious interference, several of the alleged acts of TTI and/or EC that JAAAT claims support those causes of action, do not. JAAAT alleges TTI and/or EC caused Tesoro to seek judicial intervention in the three different ways discussed, *infra.* at 4. Docket No. 4 ¶¶ 52, 126, 129. JAAAT ignores the application of the *Noerr-Pennington* immunity doctrine that provides First Amendment immunity to those who engage in the pursuit of litigation. *California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *IGEN Intl., Inc. v. Roche Diagnostics, GMBH*, 335 F.3d 303, 310 (4th Cir. 2003). *Noerr-Pennington* immunity applies to business torts, including tortious interference with contracts. *IGEN*, 335 F.3d at 310; *see, e.g., Cheminor Drugs, Ltd. V. Ethyl Corp.*, 168 F.3d 119, 128-29 (3rd Cir. 1999). Therefore, even if JAAAT had alleged facts sufficient to support its claim that TTI and/or EC caused Tesoro to institute litigation, those claims fail as the pursuit of litigation is protected by the First Amendment and cannot form the basis for a claim of tortious interference.

In Count VIII, JAAAT alleges that TTI and/or tortiously interfered with JAAAT's contract with the government by "causing Tesoro to tell its subcontractors not to appear and work on the

11

Fort Bragg site…" which caused delay in the project and additional expense to JAAAT in finding replacement contractors. Docket No. 4 ¶ 133. As the place of injury for that allegation presumably is North Carolina, the law of North Carolina applies.[3] First, JAAAT makes no allegations regarding how TTI or EC caused Tesoro's alleged action. Next, JAAAT fails to allege the necessary element that Tesoro's actions in interfering with JAAAT's contract with the government caused the government to breach the contract. *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661 (N.C. 1988) (essential element of tortious interference with contract is a resulting breach of the target contract). As there was no breach by the government, the allegation that EC and/or TTI interfered with JAAAT's contract with the government is insufficient to support a claim of tortious interference.

Finally, JAAAT's tortious interference claims fail as proper defendants to such claims must be strangers to the contract. Here, neither EC nor TTI is a stranger to the Subcontracts. JAAAT alleges that TTI is an indemnitor to the surety bonds on the projects. Docket No. 4 § 47. JAAAT alleges that EC was a party to the Teaming Agreements that led to the Subcontracts and alleges that EC was actively involved in the performance of the Subcontracts. Docket No. 4 ¶¶ 27, 31 *et seq*. A party in privity with a contract cannot tortiously interfere with that contract. *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987). "This is true because the tort of tortious interference with a contract is defined as an intentional and improper interference with the performance of a contract [that is] 'between another and a third person.'" *Will & Cosby & Assocs. v. Salomonsky*, 48 Va. Cir. 500, at *3 (Va. Cir. Ct. 1999) (quoting *Chaves*, 335 S.E.2d at 102). As the Fourth Circuit, has

---

[3] "Under Virginia's choice of law rules, which follow the traditional *lex loci delicti* approach, the law to be applied to a tort claim is the law of the place of the wrong." *ABLV Bank v. Center for Advanced Defense Studies Inc.*, 2015 WL 12517012, *1 (E.D. Va. Apr. 21, 2015).

described the same rule under West Virginia law, "Tortious interference claims lie only against a party that is a stranger to the relationship." *Childers Oil Co. v. Exxon Corp.*, 960 F.2d 1265, 1271 (4th Cir. 1992), *McDonald's Corp. v. Turner-James*, 2005 WL 7873649, at *5 (although not a signatory to the contract, a party with ability to consent to agreement is not a stranger to the agreement for purposes of tortious interference); see *Priority Auto Group, Inc. v. Ford Motor Co.*, 2013 WL 2156467, at *14-17 (Court predicts the Va. Sup. Ct. would apply holding of *Childers*, 960 F.2d 1365). Here, TTI had ongoing liability exposure arising from the performance of the Subcontracts and is, therefore, not a stranger to the Subcontracts such that it could tortiously interfere. Similarly, as an alleged party to the Teaming Agreements, and, as alleged by JAAAT to be actively involved in the performance of the Subcontracts, EC was also not a stranger to the Subcontracts and JAAAT's tortious interference claims must fail.

### C. TESORO SHOULD BE ADDED AS A NECESSARY PARTY

In the Tesoro Action, JAAAT brought the same breach of contract claims it alleges here, against the signatory to the Subcontracts, Tesoro. In a clear effort to hedge against the possibility that the Court dismisses the Tesoro Action for lack of subject matter jurisdiction, JAAAT has brought its claims against Tesoro's affiliates, TTI and EC; even though the Amended Complaint make clear that JAAAT entered into the Subcontracts with Tesoro with full knowledge of the identity of the company with which it was contracting. Docket No. 4 ¶ 30. In the event that the Court does not dismiss the Amended Complaint in its entirety, because Tesoro was the signatory to the Subcontracts, it should be added to the case as an indispensable party.

A party is indispensable if it is "required" under the F.R.Civ.P. 19(a) and "indispensable" under Rule 19(b). "It is well established that a party to a contract which is the subject of the litigation is considered a necessary party." *Ryan v. Volpone Stamp Co., Inc.,* 107 F.Supp.2d 369,

13

387 (S.D.N.Y.2000); *see, e.g., Global Detection and Reporting, Inc., v. Securetec Detektions–Systeme AG,* No. 08 Civ. 5411(GEL), 2008 WL 5054728, at *1 (S.D.N.Y.2008); *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.,* 960 F.Supp. 701, 707–08 (S.D.N.Y.1997) ("As a direct party to the contract which is under dispute, Karabu is a necessary party to this litigation for at least three reasons articulated under Federal Rule of Civil Procedure Rule 19(a)."); *Travelers Indem. Co. v. Househould Intern., Inc.,* 775 F.Supp. 518, 527 (D.Conn.1991) ("[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party."). In a case with very similar facts to those here, the Fifth Circuit in *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 558 (5th Cir.1985), found that the nondiverse subsidiary was an indispensable party in an action brought against the parent corporation under the alter ego theory because the subsidiary was a principal party to the contract at issue. *See E & E Inv., Inc. v. Simmons Co.*, 169 F.R.D. 467 472 (D.P.R. 1996) (a subsidiary is an indispensable party if the claims are largely directed at it and the subsidiary is a signatory to the contract underlying the action).

Here, Tesoro is a signatory to the Subcontracts and the allegations in the Amended Complaint are clearly directed primarily at Tesoro. JAAAT clearly believed Tesoro to be the real party in interest when it brought the Tesoro Action in this Court two years ago. Additionally, JAAAT's own allegations in the Amended Complaint here focus almost exclusively on Tesoro's actions that JAAAT alleges were directed by EC and/or TTI. *See, e.g.* Docket No. 4 ¶¶ 36, 37, 40. Therefore, in the event that the Court does not dismiss the Amended Complaint, the Court should require the addition of Tesoro as a party defendant, which as discussed *infra.* at 1, n. 1.

WHEREFORE, for the foregoing reasons, the Court should dismiss JAAAT's Amended Complaint or, in the alternative require the addition of Tesoro as a party defendant and award Tetra

Tech, Inc, and Tetra Tech EC, Inc. their fees and costs incurred herein and such other and further relief as justice may require.

                                                TETRA TECH EC, INC.
                                                TETRA TECH, INC.

                                                By: /s/_____

Neil S. Lowenstein (VSB #29845)    Email: nlowenstein@vanblacklaw.com
Richard H. Ottinger (VSB #38842)    Email: rottinger@vanblacklaw.com
Dustin M. Paul (VSB # 75287)       Email: dpaul@vanblacklaw.com
VANDEVENTER BLACK LLP
101 W. Main St., Suite 500
Norfolk, VA 23510
T: (757) 446-8600
F: (757) 446-8670
*Counsel for Tetra Tech EC, Inc. and Tetra Tech, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 11, 2017, I served upon opposing counsel a copy of the foregoing Motion to Dismiss and Memorandum in Support by ECF.

                                                By: /s/_____

Neil S. Lowenstein (VSB #29845)    Email: nlowenstein@vanblacklaw.com
Richard H. Ottinger (VSB #38842)    Email: rottinger@vanblacklaw.com
Dustin M. Paul (VSB # 75287)       Email: dpaul@vanblacklaw.com
VANDEVENTER BLACK LLP
101 W. Main St., Suite 500
World Trade Center
Norfolk, VA 23510
T: (757) 446-8600
F: (757) 446-8670
*Counsel for Tetra Tech EC, Inc. and Tetra Tech, Inc.*